UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HERIBERTO ALVAREZ,                            :
            Plaintiff,                :
                                      :    **OPINION AND ORDER**
v.                                            :
                                      :    17 CV 1178 (VB)
DIANE SOMMER M.D., Acting Hospital            :
Administrator; CHARLES HOWARD, M.D.,          :
Ophthalmologist; and FEDERAL BUREAU OF        :
PRISONS,                                      :
            Defendants.               :
------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Heriberto Alvarez, proceeding pro se and in forma pauperis, brings this action against defendants Dr. Diane Sommer, Dr. Charles Howard, and the Federal Bureau of Prisons ("BOP"), alleging they failed to provide him adequate medical care.

    Now pending is defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6). (Doc. #34).

    For the reasons set forth below, defendants' motion is GRANTED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    Plaintiff filed the complaint in this action on February 15, 2017 (Doc. #2), and on September 18, 2017, submitted an "amended complaint." (Doc. #22). Plaintiff's amended complaint stated generally the same allegations as plaintiff's original complaint, but named BOP as the sole defendant.

    In light of plaintiff's pro se status and his clear intention to assert claims against Dr. Sommer and Dr. Howard, who were named as defendants in the original complaint, as well as

1

BOP, the Court construed the amended complaint as a supplement ("Compl. Supp.") to the original complaint. (See Doc. #13).[1]

For the purpose of deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

I.  Plaintiff's Prior Action

Plaintiff wears a prosthetic eye.

In 1996, while incarcerated at the United States Penitentiary ("USP") in Atlanta, Georgia, plaintiff commenced a pro se action against various defendants, including BOP. See Alvarez v. Taylor, Scott, DeRose, and Federal Bureau of Prisons, 96 Civ. 963 (N.D. Ga.) (the "Georgia Action"). Plaintiff alleged he received inadequate medical treatment because his prosthetic eye did not properly fit his eye socket, and that he experienced pain, swelling, and bleeding as a result.

On March 24, 2003, the court denied defendants' motion for summary judgment in the Georgia Action, finding plaintiff "submitted sufficient evidence from which a jury could

---

[1] The complaint and supplement to the complaint are collectively referenced as "the complaint" throughout this Opinion.

[2] In addition to the complaint, the Court has reviewed and considered plaintiff's declaration in support of his motion to reconsider the Court's June 12, 2017, Order, as well as his opposition to defendants' motion to dismiss, and his January 8, 2018, motion to expand the record. Further, the Court takes judicial notice of public records from plaintiff's prior legal proceedings, which are related to plaintiff's claims here. See Jackson v. New York State, 523 F. App'x 67, 68 (2d Cir. 2013) (summary order) ("Matters subject to judicial notice—such as decisions [in] related proceedings—are properly considered on a motion to dismiss and do not require the court to consider the motion as one for summary judgment"). Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

conclude that Defendants were deliberately indifferent when they decided to take an 'easier but less efficacious course of treatment.'" 96 Civ. 963, Doc. #109 at 10.

Thereafter, the parties entered into a consent order, pursuant to which the BOP,

> whether through its agent, subsidiary or other parties, shall have Mr. Alvarez presented to Dr. Brent Murphy, an ocular plastic surgeon in Atlanta, or a similar, equally qualified surgeon, for the purpose of obtaining the surgery he seeks, namely a facial graft to replace the volume and increase the conjunctival fornix (line of reflection of the conjunctiva from the eyelid to the eyeball), a new prosthetic device and a new conforming device to hold the prosthetic eye in place no later than December 1, 2004.

96 Civ. 963, Doc. #122 (the "Consent Order") at 3.

In October and November, 2004, plaintiff saw Dr. Patrick Collins, an ophthalmologist, who told plaintiff he was qualified to perform plaintiff's surgery. Plaintiff refused treatment, ostensibly because he wanted an ocular plastic surgeon to perform surgery as the Consent Order directed.

In 2005, plaintiff was transferred to the federal prison medical center in Devens, Massachusetts, where he saw defendant Dr. Howard. Dr. Howard referred plaintiff to Dr. Peter Ruben, Chief of Oculoplastic Surgery at Massachusetts Eye and Ear Infirmary, who determined surgery was not medically necessary.

In early 2006, plaintiff saw Dr. Suzanne K. Freitag,[3] who initially agreed to perform surgery, then determined inflammation in plaintiff's eye socket required delay. Subsequently, Dr. Freitag determined she would not perform the surgery, because plaintiff's eye was stable. Instead, Dr. Freitag referred plaintiff to an ocularist for a new prosthesis.

---

[3] Dr. Freitag was at one time a defendant in this action, but plaintiff's claims against her were dismissed for lack of personal jurisdiction. (See Doc. #11).

3

Plaintiff received a new prosthesis from the Jarhling Ocularist group in Rhode Island, and instructions to use "D.O.C. lotion" to clean and care for the prosthesis.

According to Dr. Howard, plaintiff's new prosthesis fit well and did not cause irritation, and plaintiff received the prescribed lotion.

Based on the foregoing, on December 1, 2009, the court in the Georgia Action found defendants did "everything reasonable to ensure Plaintiff receiv[ed] adequate medical care." 96 Civ. 153, Doc. #156 at 6. Thus, the court concluded there was "no further declaratory or injunctive relief" it could grant, and closed the case stating: "If any new problems develop for Plaintiff, he can take them up with the United States District Court for the Middle District of Florida which has jurisdiction over Plaintiff's present custodian, in Coleman, Florida." Id.

II.   Plaintiff's Current Claims

Much of plaintiff's complaint is a recitation of events that took place before the Georgia Action was closed.

In sum, plaintiff complains BOP has forced him to wear an ill-fitting prosthesis for two decades, which has resulted in "bleeding, pain, discomfort, redness, ulcers, and . . . ingrowing eye's [sic] lashes along both upper and lower right side eyelids." (Compl. at 2).[4] Plaintiff alleges BOP took "an easier and less efficacious course of treatment, when [it] refitted Plaintiff with a new prosthesis withou[t] the reconstruction' [sic] surgery." (Compl. Supp. at 5).

It is not clear how long plaintiff was incarcerated in Coleman, Florida; but between April 3, 2013, and March 21, 2017, he was incarcerated at Federal Correctional Institution ("FCI"), Otisville.

---

[4]   As used herein, "Compl. at __" refers to the Court's electronic case filing system page number stamped at the top of each page of the complaint and its attachments, which are filed together as a single document. (Doc. #2).

4

Medical records attached to plaintiff's complaint indicate that while plaintiff was at FCI Otisville, defendant Dr. Sommer twice recommended surgery to his eye socket, first in 2013 and again in 2016. In keeping with Dr. Sommer's second recommendation, plaintiff's treating provider submitted a request for a surgical consultation. The request was "[d]isapproved" on October 12, 2016. (Compl. at 16). According to plaintiff, Dr. Howard ordered the clinical director at FCI Otisville not to approve the surgical procedure. The disapproval was accompanied by notes questioning whether plaintiff was wearing his newest prosthesis, and using the appropriate D.O.C. lotion. At an appointment on November 14, 2016, plaintiff informed his treating provider that he wore only his newest prosthesis, but never received the lotion.

On November 6, 2017, plaintiff submitted a "Notice of Status of this Case." (Doc. #27). The notice states non-party Dr. Michael Wilkinson performed plaintiff's internal socket reconstruction surgery on October 24, 2017. In addition, Dr. Wilkinson advised plaintiff that when his post-surgery inflammation subsided, he would reevaluate him for eyelid reconstruction and prosthesis replacement. (Doc. #27).

Plaintiff seeks a jury trial and compensation for the alleged shortcomings in his medical treatment.

**DISCUSSION**

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled

5

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

II.   Application

Liberally construed, plaintiff's complaint asserts a constitutional claim for deliberate indifference to medical needs, and claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C § 2671, et seq., for negligence and medical malpractice.

Defendants argue plaintiff failed to exhaust available administrative remedies.

The Court agrees.

The Prison Litigation Reform Act ("PLRA") provides, "[n]o action shall be brought with respect to prisons under . . . Federal law[] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA "requires proper exhaustion," meaning that prisoners must "compl[y] with the system's critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 93, 95 (2006). Specifically, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91.

The BOP's administrative remedy program, 28 C.F.R. § 542.10, et seq., sets forth procedures that inmates in BOP custody must follow to exhaust administrative remedies. First, an inmate shall "present an issue of concern informally to staff." 28 C.F.R. § 542.13(a). If the issue is not resolved informally, then the inmate may submit to the warden a formal written request for administrative remedy, a form "BP-9," within twenty days of the occurrence which gave rise to the complaint. 28 C.F.R. § 542.14(a).

"An inmate who is not satisfied with the Warden's response [to the form BP-9] may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). "An inmate who is not satisfied with the Regional Director's response [to the form BP-10] may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." Id.

The benefits of administrative exhaustion "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Jones v. Bock, 549 U.S. 199, 219 (2007). These benefits "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009).

Here, plaintiff states he exhausted administrative remedies in 1995, before he commenced the Georgia Action. In 1995, plaintiff was in a different institution, received treatment from different medical providers, and even used a different prosthesis. Grievances filed in 1995 could not have allowed FCI Otisville to address plaintiff's complaints about its medical program before being subjected to suit. Plaintiff's allegations make clear that he failed to initiate administrative remedies with respect to his complaints in the instant action, let alone exhaust administrative remedies. In addition, BOP records indicate plaintiff has not filed any grievances at FCI Otisville. (See Johnson Decl. ¶ 14).

Moreover, plaintiff's allegations do not suggest his failure to exhaust may be excused. A prisoner's duty to exhaust can be excused when (i) an administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (ii) "an administrative scheme" is "so opaque that it becomes, practically speaking, incapable of use" and "so confusing that . . . no reasonable prisoner can use" it; or (iii) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1859–60 (2016). Even a liberal reading of the complaint does not permit the Court to conclude any of these circumstances apply.

Finally, there is no suggestion in the complaint that plaintiff attempted to pursue a claim under the FTCA by filing an administrative claim with the appropriate federal agency and receiving a final denial in writing, as the statute requires. Moreover, BOP records reflect that plaintiff has not submitted an administrative claim to the BOP Northeast Regional Office. (See Johnson Decl. ¶ 15).

The FTCA's exhaustion requirement "is jurisdictional and cannot be waived." Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005). "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). Thus, to the extent plaintiff seeks to assert a claim for negligence or medical malpractice under the FTCA, administrative remedies for such claims have not been exhausted, and such a claim must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

Accordingly, plaintiff failed to exhaust available administrative remedies, and that failure cannot be excused. Although the Court is sympathetic to plaintiff's claims, they must be dismissed.[5]

III.     Leave to Amend

The Court should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). Moreover, when a pro se plaintiff fails to state a cause of action, the Court "should not dismiss without granting leave to amend at least once when a liberal reading of the

---

[5] Defendants also move to dismiss under Rule 12(b)(2), on the ground that the Court lacks personal jurisdiction over Dr. Howard. Because plaintiff's claims against all defendants have been dismissed for failure to exhaust administrative remedies, the Court need not address this argument.

9

complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).

Here, reading the complaint liberally, the Court does not find any allegations that suggest plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, in view of plaintiff's assertion that he exhausted administrative remedies in 1995, the Court finds that repleading would be futile, because the problems with the complaint are substantive, and supplementary and/or improved pleading will not cure its deficiencies. See id.

Accordingly, the Court declines to grant plaintiff leave to amend.

## CONCLUSION

Defendants' motion to dismiss is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion (Doc. #34) and close this case.

Dated: July 3, 2018
      White Plains, NY

                              SO ORDERED:

                              Vincent L. Briccetti
                              United States District Judge